FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 05 2014 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK       x   Docket #
ANN MILLER and MARY MILLER,            14-CV-
                        Plaintiffs,   **CV 14 2928**

         -vs.-                         COMPLAINT

KATHLEEN A. RICE, ANNE                 **SEYBERT, J**
DONNELLY, O.J. ROSENBAUM,              (Jury Trial Demanded)
RICK WHELAN, ANTHONY
ROBANDO, WILLIAM WALSH,                **WALL, M.**
and WILLIAM NAPOLITANO,

                        Defendants.
                                   x

I.   INTRODUCTION:

   This is a pro se civil action filed to redress the Civil Rights Violations, Conspiracy Against Rights, and Interference with Familial Associations perpetrated against plaintiffs by defendants. Defendants are sued in their official and individual capacities. Plaintiffs are seeking a money judgment for compensatory, punitive, exemplary and special damages, along with costs, disbursements and attorneys fees.

II.  JURISDICTION AND VENUE:

   1. The U.S. district courts have original jurisdiction under 28 U.S.C. §1331 over Civil Rights actions pursuant to 42 U.S.C. §1983.

2. The U.S. Courts have original jurisdiction under 28 U.S.C. § 1331, over Conspiracy Against Rights Actions under 42 U.S.C. §§ 1985 and 1986.

3. As all actors, plaintiffs and defendants reside or maintain their offices in the Eastern District of New York, and all acts complained of occurred in that district, venue is properly placed in said district.

III. PARTIES:

4. Plaintiff ANN MILLER and MARY MILLER (collectively referred to as "PLAINTIFFS") are Citizens of the United States and Residents of the Eastern District of New York.

5. Defendant KATHLEEN H. RICE ("RICE") is the Elected District Attorney of Nassau County, (a political subdivision of the Eastern District of New York) and maintains her offices in that County.

6. Defendants ANNE DONNELLY ("DONNELLY") D.J. ROSENBAUM ("ROSENBAUM") and RICK WHELAN ("WHELAN") are Assistant District Attorneys employed by and acting under the authority of Defendant RICE, and maintain their offices in Nassau County.

7. Defendants ANTHONY ROBANDO ("ROBANDO"), WILLIAM WALSH ("WALSH") and

WILLIAM NAPOLITANO ("NAPOLITANO") are Investigators (also known as "Detectives") employed by defendant RICE. Defendant ROBANDO is the Chief of the Investigation Unit. Defendants ROBANDO, WALSH and NAPOLITANO are employed in and maintain their offices in Nassau County.

8. Each of the named defendants acted under color of State Law.

9. With respect to the Civil Rights, Conspiracy Against Rights and Familial Association claims against RICE, DONNELLY, ROSENBAUM and WHELAN, each of the named defendants was acting outside the scope of their prosecutorial duties, and they are not entitled to a defense of Absolute Immunity.

10. With respect to the Civil Rights, Conspiracy Against Rights and Familial Association claims against all defendants, said defendants did not act in good faith, their actions were not objectively reasonable, defendants acted with malice, and with criminal indifference to plaintiffs' rights, and they are not entitled to a defense of qualified immunity.

IV. FACTS:

11. In or about March, 2012, defendants RICE, ROBANDO, NAPOLITANO and WALSH became aware that DANIEL MILLER, who is not a party to this action, was in possession of evidence that RICE, the elected District Attorney, committed the crimes of Driving While Intoxicated, Bribery, Tampering with Evidence, Official Misconduct and other Penal Law crimes.

12. Defendants RICE, ROBANDO, NAPOLITANO and WALSH were generally aware that DANIEL MILLER was in possession of a videotaped statement in which one or more of the participants in the scheme to cover up these penal law crimes admitted their own involvement, as well as implicating RICE and ROBANDO.

13. The party making these admissions is also a member and employee of defendant RICE's office, and at the time was unaware that his or their statements and/or admissions were being recorded.

14. One or more of the party or parties involved in making these admissions is a named defendant in this action whose identity will be revealed at the appropriate time.

15. After DANIEL MILLER was arrested on April 19, 2012, defendant NAPOLITANO communicated with ANN MILLER and repeatedly demanded that she deliver "the Tapes."

16. ANN MILLER was completely clueless as to what NAPOLITANO was talking about.

17. Nevertheless, NAPOLITANO insisted that plaintiffs deliver "the Tapes," and threatened that both plaintiffs and DANIEL MILLER would "be sorry" and that both plaintiffs and DANIEL MILLER's "entire world would be destroyed."

18. Plaintiff ANN MILLER attempted to explain that she did not have any knowledge of any "tapes," however, defendant NAPOLITANO, undaunted by these claims, insisted that ANN MILLER and/or MARY MILLER "find a way to obtain them."

19. Within days of this telephone conversation, plaintiff ANN MILLER received a telephone call from defendant WALSH, promising to "help" plaintiff ANN MILLER's brother (plaintiff MARY MILLER's son) DANIEL MILLER, if the plaintiff "delivers the Tapes to" WALSH.

20. Plaintiff ANN MILLER attempted to explain to WALSH that she was unaware of any "TAPES," nor was plaintiff MARY MILLER aware of them.

21. Defendant WALSH then stated to plaintiff ANN MILLER that defendant RICE, along with defendant ROBANDO were aware of the existence of "the TAPES" and would "use any available means to get them."

22. Plaintiffs did not know either the content, location or even existence of these "Tapes" until in or about 2014.

23. On or about June 26 or 27, 2012, members of the Nassau County Police Department searched the plaintiffs' home on the pretext of looking for "files" or "paperwork." However, the members of the Police Department went into the poolhouse where DANIEL MILLER had stored a bag of video tapes and other electronic recording media.

24. Due to the fact that both plaintiffs are physically disabled, they are unable to access the poolhouse, and have no idea what was stored therein, or seized from said poolhouse.

25. About 5 or 6 days after the search, ANN MILLER was yet again contacted by NAPOLITANO, and asked if she was "ready to surrender the tapes."

26. ANN MILLER again explained to NAPOLITANO that she knew nothing about "TAPES" to which he replied, "Then my Bosses are going to destroy you and make a public laughing stock out of you."

27. ANN MILLER protested that neither she nor MARY MILLER was able to help him and he stated, "let's see if you change your mind when your Mother has no job, when you both have no friends, when you both get arrested, and when we plaster you all over the news." NAPOLITANO then disconnected the call.

28. On or about July 12, 2013, DANIEL MILLER was arraigned on an indictment filed in the Nassau County Court charging him with Conspiracy to Murder a Witness.

29. Defendants WHELAN and DONNELLY contacted the press, and made allegations that plaintiffs were part of the conspiracy, and would also be arrested at a later date.

30. News coverage was so wide, it extended to all 3 major N.Y. Newspapers,

every network, cable and even Spanish news station, and local papers.

31. Defendant DONNELLY and WHELAN, at the direction and control of RICE, did act outside their roles as prosecutors and "advocates" and outside any colorable claim of authority.

32. Defendants RICE, DONNELLY, WHELAN and ROSENBAUM also falsely and fraudulently used a SEARCH WARRANT which did not allow the taking of photographs, for the purpose of obtaining photographs of an alleged "crime scene" for use in an unrelated case against DANIEL MILLER.

33. Defendants RICE, WHELAN, DONNELLY and ROSENBAUM's actions were not "intimately [or even remotely] associated" with any "judicial phase" or prosecutorial function, were investigatory and administrative in nature.

34. Unknown named investigators did also contact each of plaintiffs' family friends whom had visited DANIEL MILLER at the Nassau County Correctional Center, and did attempt to interfere in plaintiffs' relationships with said family friends.

35. As a direct result of these unlawful and unwarranted intrusions into plaintiffs' friendships, plaintiffs' suffered the loss of friendships and associations with co-workers plaintiffs relied on for emotional and other support.

36. Defendants RICE, DONNELLY, WHELAN, ROSENBAUM, ROBANDO, WALSH and NAPOLITANO did combine, conspire, confederate and agree to embark on a public and personal smear campaign against the plaintiffs, did act in concert to effect their conspiracy against plaintiffs, and did fabricate evidence, make false statements in court, did slander the plaintiffs in the media, and did defame plaintiffs' character as part and object of their conspiracy, and in order to effect same.

37. Shortly after the July 12, 2013 news releases and after approaching family friends, defendant WALSH again called plaintiff ANN MILLER, and did state that, "now you both know how serious this is, and if you get us that tape, we can still make this go away."

38. Plaintiff ANN MILLER then again tried to explain that she and MARY MILLER

had no knowledge of any tape, and that they did not understand any of this.

39. Defendant WALSH then stated to ANN MILLER that she and MARY MILLER would have to be "sacrificed" to make DANIEL MILLER "give up the tape."

40. Plaintiffs were thereafter arrested and the media was contacted in advance of the arrest by WHELAN and DONNELLY and advised when to be at the 4th Precinct of the Nassau County Police Department for the sole purpose of causing the plaintiffs further embarrassment and despair.

41. After plaintiffs surrendered to the police and were released on their own recognizance, defendant NAPOLITANO called ANN MILLER and asked, "now that we made you into a public disgrace, are you going to give us the tapes?"

42. Plaintiff ANN MILLER then hung up on NAPOLITANO.

43. On or about September 4, 2013, defendant WALSH obtained an order from the Nassau County Court to re-arrest DANIEL MILLER for fraud charges.

44. DANIEL MILLER was taken to the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE

and defendants WALSH and ROBANDO did attempt to coerce DANIEL MILLER into surrendering this "TAPE" to them, by, inter alia, using the threat of felony prosecution of plaintiffs.

45. Defendants ROBANDO and WALSH did admit that the news releases, visits to family friends, arrest and prosecution of plaintiffs and issuance and execution of warrant was an agreement by and between RICE, DONNELLY, ROSENBAUM, WHELAN, ROBANDO, WALSH and NAPOLITANO to obtain the incriminating evidence against RICE and ROBANDO.

46. Defendants WALSH and ROBANDO did also threaten that "bad things can happen to the elderly and disabled when they live alone."

47. DANIEL MILLER explained that he would not be intimidated by defendants, and refused to speak to them further.

48. On or about September 13, 2013, DANIEL MILLER was taken to Nassau County Court where defendant NAPOLITANO did attempt the same coercive tactics, and did brag about their (his, ROBANDO, RICE, WALSH, DONNELLY, WHELAN and ROSENBAUM'S)

"brilliant plan to use [DANIEL MILLER] twinly as leverage to get those tapes."

49. DANIEL did refuse to speak to NAPOLITANO any further.

50. Plaintiff ANN MILLER received a telephone call from a person who identified himself as "NAPOLITANO's Boss" (a male) and he stated, "If we do not get those tapes before the election, you have no hope of DANIEL ever coming home."

V. CLAIMS FOR DAMAGES:

51. As a direct result of the acts of the defendants, and each of them, the plaintiffs did suffer, and continue to suffer gross violations of their civil rights against unreasonable searches, false and fabricated evidence and press statements at the investigation stages of the case, public ridicule, and other harm.

52. As a direct result of the conspiracy against the rights of the plaintiffs by the defendants, and each of them, plaintiffs did suffer and continue to suffer all of the damages to their rights as alleged in paragraph 51.

53. As a direct result of the conspiracy against plaintiffs' rights, and the violations of plaintiffs' civil rights, plaintiffs did suffer, and continue to suffer:

    A. Loss of reputation and diminution of character;

    B. Loss of employment and diminution of income;

    C. Loss of friendships and associations;

    D. Mental Anguish and Emotional Trauma;

    E. Disruption of Familial Association; and

    F. Other economic and non-economic harm.

54. As a further direct result of the conspiracy against rights, and violations of the civil rights of the plaintiffs, by the defendants, and each of them, plaintiffs are entitled to judgment in their favor, to recover compensatory, punitive, exemplary and special damages, in the amount of $1,000,000.00 from each defendant, for a total of $7,000,000.00, together with costs, interest, and attorneys fees

WHEREFORE, the undersigned plaintiffs hereby respectfully pray for a judgment in favor of the plaintiffs against each defendant in the amount of $1,000,000.00, for a total amount of $2,000,000.00 together with all disbursements, costs and attorneys fees, and such other and further relief as to this Court may seem just and proper.

Dated: Inwood, New York
May 1st, 2014

Respectfully submitted,

*Ann Miller*
ANN MILLER

Dated: Inwood, New York
May 1st, 2014

*Mary Miller*
MARY MILLER

The undersigned parties declare under penalty of perjury that the foregoing is true and correct to the best of their knowledge.

Dated: May 1st, 2014

*Ann Miller*
ANN MILLER

Dated: May 1st, 2014

*Mary Miller*
MARY MILLER