```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ANN MILLER, MARY MILLER,

                    Plaintiffs,
                                        MEMORANDUM & ORDER
         -against-                      14-CV-2928(JS)(WDW)

KATHLEEN A. RICE, ANNE DONNELLY,
D.J. ROSENBAUM, RICK WHELAN,
ANTHONY ROBANDO, WILLIAM WALSH,
and WILLIAM NAPOLITANO,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:     Ann Miller, pro se
                   Mary Miller, pro se
                   207 W. Broadway
                   Inwood, NY 11906

For Defendants:    No appearances
```

SEYBERT, District Judge:

On May 5, 2014, pro se plaintiffs Ann Miller and Mary Miller (together, "Plaintiffs") filed a Complaint in this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against Nassau County District Attorney Kathleen M. Rice ("D.A. Rice"), Assistant District Attorneys Anne Donnelly ("A.D.A. Donnelly"), D.J. Rosenbaum ("A.D.A. Rosenbaum"), Rick Whelan ("A.D.A. Whelan"), and three investigators allegedly employed by D.A. Rice, namely Anthony Robando ("Det. Robando"), William Walsh ("Det. Walsh"), and William Napolitano ("Det. Napolitano") (collectively, "Defendants"), accompanied by an application to proceed in forma pauperis for each Plaintiff.

Upon review of the declarations in support of each

application to proceed in forma pauperis, the Court finds that Plaintiffs are qualified to commence this action without prepayment of the filing fee. See 28 U.S.C. §§ 1914(a); 1915(a)(1). Therefore, Plaintiffs' requests to proceed in forma pauperis are GRANTED. However, for the reasons that follow, the Complaint is sua sponte DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii).

BACKGROUND[1]

Plaintiffs' Complaint seeks to recover monetary damages pursuant to Section 1983 for alleged civil rights violations by the Defendants, all of whom are alleged to be employed by the State of New York. Plaintiffs allege that the Defendants are being sued in their official and individual capacities. (Compl. at 1, I.) Plaintiffs are the mother and sister of Daniel Miller,[2] a pretrial

---

[1] The following facts are taken from Plaintiff's Complaint and are presumed to be true for the purpose of this Memorandum and Order.

[2] Daniel Miller is no stranger to this Court, having filed over twenty (20) in forma pauperis civil actions, almost all of which have been dismissed: Miller v. U.S., No. 00-CV-3088(CBA) (withdrawn); Miller v. Cnty. of Nassau, No. 00-CV-6124(JS) (dismissed for failure to state a claim upon which relief may be granted); Crosby v. Walsh, No. 03-CV-4897(ARR) (dismissed in forma pauperis complaint filed by four inmates, including Miller, for failure to state a claim); Miller v. Reilly, No. 05-CV-0611 (JS) (settled); Miller v. Cnty. of Nassau, 467 F. Supp. 2d 308 (E.D.N.Y. 2006) (dismissed for failure to state a claim upon which relief may be granted); Miller v. Reilly, No. 06-CV-3727(ADS) (settled); Miller v. Reily, No. 06-CV-6485(JS) (withdrawn); Miller v. Zerillo, No. 07-CV-1687(JS) (dismissed as moot and unexhausted under the PLRA); Miller v. Zerillo, No. 07-CV-1719(JS) (dismissed as moot and unexhausted under the PLRA);

2

detainee under, inter alia, Nassau County Criminal Case Number 01038N-2012.³ (Compl. ¶ 19; New York State Unified Court System,

---

Miller v. Lindsay, No. 07-CV-2556 (JS) (dismissed as moot); Miller v. Alexander, No. 07-CV-3533 (JS) (dismissed as moot); Miller v. Reilly, No. 08-CV-1863 (TCP) (dismissed as unexhausted and moot); In re Daniel Miller, No. 12-MC-0512 (JBW) (case closed by Order dated August 6, 2012 and Plaintiff's submission concerning "Terrorist Acts" was forwarded to the U.S. Marshal); Miller v. Spizatto, No. 12-CV-2511 (JS) (dismissed unexhausted § 2241 petition claiming excessive bail); Miller v. Cnty. of Nassau, No. 12-CV-4164(JS); Miller v. Smith, No. 12-CV-4378 (JS); Miller v. County of Nassau, No. 12-CV-4466(JS); Miller v. Cnty. of Nassau, No. 12-CV-4430(JS) (closed by Order dated October 15, 2012); Miller v. Cnty. of Nassau, No. 12-CV-4549(JS) (closed by Order dated October 15, 2013); and Miller v. Cnty. of Nassau, No. 12-CV-4550(JS) (closed by Order dated October 15, 2012); Miller v. USA, No. 14-CV-2785 (JS) (closed by Order dated July 21, 2014).

This Court dismissed the four most recent in forma pauperis complaints filed by Plaintiff, Miller v. Cnty. of Nassau, No. 12-CV-4430(JS) (closed by Order dated October 15, 2012); Miller v. Cnty. of Nassau, No. 12-CV-4549(JS) (closed by Order dated October 15, 2013); and Miller v. Cnty. of Nassau, No. 12-CV-4550(JS) (closed by Order dated October 15, 2012) and Miller v. USA, No. 14-CV-2785(JS) (closed by Order dated July 21, 2014), finding him barred from proceeding in forma pauperis under the "three strikes" provision of 28 U.S.C. 1915(g).

This Court is quite familiar with Daniel Miller's handwriting and notes that the instant handwritten Complaint appears to have been drafted by Daniel Miller. **Plaintiffs are cautioned that any attempt to circumvent the filing bar imposed by the Court against Daniel Miller will not be tolerated and may subject them to sanctions.**

³ Daniel Miller

> was arrested on April 19, 2012 and charged with Criminal Sexual Act in the 1st Degree (a B felony) for sexually assaulting a 17-year-old male employee of his Santeria supplies store [ ]. Miller was also charged in May 2012 with Conspiracy in the 2nd degree (a B felony) and Criminal Solicitation in the 2nd Degree (a D felony) for plotting to kill the teenager in the

3

WebCrims, https://iapps.courts.state.ny.us/webcrim.) According to Plaintiffs, the Defendants conspired and had Plaintiffs and Daniel Miller charged on fabricated criminal charges because Plaintiffs and Daniel Miller refused to give them evidence that Daniel Miller allegedly possessed demonstrating that D.A. Rice had committed various crimes.

More specifically, shortly prior to Miller's April 19, 2012 arrest, D.A. Rice and Detectives Robando, Napolitano, and Walsh allegedly learned that Miller "was in possession of evidence", including a videotape, establishing that D.A. Rice "committ[ed] the crimes of driving while intoxicated, bribery, tampering with evidence, official misconduct and other Penal Law crimes." (Compl. ¶¶ 11-12.) Plaintiffs claim that Det. Napolitano contacted Ann Miller shortly after Miller's arrest and "demanded that she deliver the [video]tapes." (Compl. ¶ 15.) Although Ann

---

sexual assault case to prevent him from testifying. . . . Miller's sister Ann and mother Mary were both arrested and charged in July 2012 in connection assisting Daniel Miller in the conspiracy scheme. Ann Miller was charged with Tampering with a Witness in the 4th Degree (an A misdemeanor) and Conspiracy in the 6th Degree (a B misdemeanor). Mary Miller, a school secretary with access to the victim's personal information, was charged with Official Misconduct an (A misdemeanor). Both pleaded guilty in March 2013 and received conditional discharges and orders of protection for [Daniel] Miller's victim.

http://www.nassaucountyny.gov/agencies/da/NewsReleases/2014/050214-miller.html.

4

Miller "was completely clueless" as to what Det. Napolitano was requesting, he continued to demand that she "deliver the tapes." (Compl. ¶¶ 16-17.) Plaintiffs allege that Napolitano threatened that they would both "be sorry" and that their "entire world," and that of Miller, "would be destroyed" if they did not produce the videotapes. (Compl. ¶ 17.)

Plaintiffs next claim that Det. Walsh contacted Ann Miller and "promis[ed] to help" with Miller's criminal case if Plaintiffs delivered the tapes to him. (Compl. ¶ 19.) Ann Miller "attempted to explain to [Det.] Walsh that she was unaware of any 'tapes'" and that Mary Miller had no such knowledge either. (Compl. ¶ 20.)

In late June 2012, Plaintiffs claim that members of the Nassau County Police Department searched their home "on the pretext of looking for 'files' or 'paperwork'" when in actuality they were looking for the videotapes. (Compl. ¶ 23.) Plaintiffs claim that, unbeknownst to them, Daniel Miller had left a bag of videotapes and electronic recording media in the poolhouse at their residence. (Compl. ¶¶ 23-24.) According to Plaintiffs, shortly after the search of their property, Det. Napolitano again contacted Ann Miller to inquire whether she was "ready to surrender the tapes." (Compl. ¶ 25.) When Ann Miller stated that she knew nothing of the tapes, Det. Napolitano allegedly threatened to "destroy" her and "make a public laughing stock out of [her]." (Compl. ¶ 25.)

5

On July 12, 2012, Daniel Miller was arraigned on an indictment charging him with conspiracy to murder a witness. (Compl. ¶ 28.) A.D.A. Donnelly and A.D.A. Whelan are alleged to have contacted the press, at the direction of D.A. Rice, to report that Plaintiffs "were part of the conspiracy and would also be arrested at a later date." (Compl. ¶¶ 29, 31.) Shortly thereafter, Det. Walsh again contacted Ann Miller and allegedly stated "now you both know how serious this is, and if you get us that tape, we can still make this go away." (Compl. ¶ 37.) In response, Ann Miller explained that neither she nor Mary Miller had any "knowledge of any tape, and that they did not understand any of this." (Compl. ¶ 38.) According to the Complaint, Det. Walsh then stated that both Ann Miller and Mary Miller "would have to be 'sacrificed' to make Daniel Miller 'give up the tape.'" (Compl. ¶ 39.)

Thereafter, Plaintiffs were arrested and allege that A.D.A.s Whelan and Donnelly contacted the press so there would be media coverage of Plaintiffs' surrender at the Nassau County Police Department's Fourth Precinct. Plaintiffs claim that this action was undertaken "for the sole purpose of causing the [P]laintiffs further embarrassment and despair." (Compl. ¶ 40.) After Plaintiffs were released on their own recognizance, Plaintiffs claim that Det. Napolitano called Ann Miller and asked, "now that we made you into a public disgrace, are you going to give us the

tapes?" (Compl. ¶ 41.) Ann Miller claims to have hung up the telephone without a response. (Compl. ¶ 42.)

Having not obtained the tapes from Ann Miller or Mary Miller, the Plaintiffs claim that the Defendants conspired to have Daniel Miller re-arrested on fraud charges in an effort to further coerce and intimidate the Miller family to produce the "tape." (Compl. ¶¶ 43-50.) Plaintiffs allege that this strategy proved unsuccessful since Daniel Miller "explained that he would not be intimidated by [D]efendants and refused to speak to them. . . ." (Compl. ¶ 47.)

As a result of the foregoing, Plaintiffs claim to have suffered a "loss of reputation and dimunition [sic] of character"; "loss of employment and dimunition [sic] of income"; loss of friendships and associations"; metal anguish and emotional trauma"; "disruption of familial association"; and "other economic and non-economic harm." (Compl. ¶ 53(A)-(F).) Plaintiffs seeks to recover a monetary damages award in the amount of $1 million against each Defendant for a total award of $7 million, together with costs, interest and attorneys fees.[4] (Compl. ¶ 54.)

DISCUSSION

I. In Forma Pauperis Application

Upon review of Plaintiffs' declarations in support of

---

[4] As Plaintiffs are proceeding pro se, there is no basis for them to seek to recover an award of attorneys' fees.

7

their applications to proceed in forma pauperis, the Court finds that Plaintiffs are qualified to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiffs' requests to proceed in forma pauperis are GRANTED.

II. Application of 28 U.S.C. § 1915

Section 1915 of Title 28 requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination.

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted). The

plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 128 (2d Cir. 2011). While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

III. Section 1983

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983; accord Rehberg v. Paulk, --- U.S. ----, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012). To state a claim under Section 1983, a plaintiff must "'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" Rae v. Cnty. of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

A. Official Capacity Claims Against the Defendants

1. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. "The reach of the Eleventh Amendment has . . . been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns . . . ." State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (quoting W. Mohegan Tribe & Nation v. Orange County, 395 F.3d 18, 20 (2d Cir. 2004)) (alterations in original). Eleventh Amendment immunity also extends to suits for money damages against state officials in their official capacities. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citation omitted).[5]

---

[5] A narrow exception to this rule exists for official-capacity suits against state officers seeking prospective injunctive relief. See Will, 491 U.S. at 71, n. 10. Given that Plaintiffs do not seek any prospective injunctive relief against any state

Here, Plaintiffs' Section 1983 claims seek exclusively money damages against the Defendants, all of whom are alleged to be state officials sued in their official capacities. Thus, Plaintiffs' claims are clearly barred by the Eleventh Amendment. Accordingly, such claims are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. 1915(e)(2)(B)(ii)-(iii).

B. <u>Individual Capacity Claims Against Defendants</u>

Plaintiffs state in the introduction to their Complaint that "Defendants are sued in their official and individual capacities." (Compl. at 1, I.) However, the Complaint is bereft of any facts from which the Court can reasonably construe conduct undertaken in any of the Defendants' individual capacities. Indeed, the challenged conduct--the initiation and prosecution of criminal charges against Ann Miller, Mary Miller, and Daniel Miller, and the underlying investigations relating thereto--fall squarely within the Defendants' official duties. However, given Plaintiffs' <u>pro se</u> status and the Court's obligation to afford their Complaint a liberal construction, the Court considers whether a plausible claim is alleged against any Defendant in his or her individual capacity.

Though Plaintiffs do not identify the legal nature of the claimed "civil rights violations", given the factual

---

Defendant in his or her official capacity, the exception has no application here.

allegations set forth in the Complaint, the Court understands that Plaintiffs complain that they were falsely arrested and maliciously prosecuted.

To establish a false arrest claim under § 1983, a "plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted); see also Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003). Similarly, "[t]o prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); see also Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009); Savino, 31 F.3d at 72. The existence of probable cause is a complete bar to a claim for malicious prosecution or false arrest. Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) ("Probable cause is a complete defense to an action for false arrest.") (citation and internal quotation marks omitted); see also D'Olimpio v. Cristafi, 718 F. Supp. 2d 357, 364-65 (S.D.N.Y. 2010) ("It is well settled that the existence of probable cause is a complete defense to

12

claims of false arrest and malicious prosecution under § 1983.") (citing Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007)).

Moreover, in Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 1298 L. Ed. 2d 383 (1994), the Supreme Court held that,

> in order to recover for allegedly unconstitutional [actions] [ ] whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Heck, 512 U.S. at 486–87. In other words, under this "favorable termination" rule, Section 1983 claims must fail as a matter of law where "a judgment in favor of the plaintiff would necessarily imply the invalidity" of a conviction that flowed from the allegedly unconstitutional acts. Id. at 487. Thus, where an underlying alleged false arrest or malicious prosecution has led to a conviction, including one entered following a guilty plea, and that conviction remains unchallenged, Fourth Amendment claims are barred. See, e.g., Younger v. City of New York, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution barred by conviction entered on guilty plea); see also Flemming v. City of New York, No. 02 Civ. 4113(PKC), 2006 WL 1006263, at *3 (S.D.N.Y. Apr. 18, 2006)

13

(guilty plea barred false arrest and malicious prosecution claims because conviction not reversed or otherwise declared invalid) (collecting cases).

Here, both Plaintiffs plead guilty to the charges underlying their false arrest and malicious prosecution claims. Accordingly, such claims are now barred by Heck. Given that Plaintiffs have not alleged that their convictions have been vacated, overturned or otherwise invalidated, they have not alleged a plausible false arrest or malicious prosecution claim. Accordingly, their Section 1983 claims against the Defendants in their individual capacities are DISMISSED pursuant to 28 U.S.C. 1915(e)(2)(B)(ii).

## CONCLUSION

For the reasons set forth above, Plaintiffs' applications to proceed in forma pauperis are GRANTED, however the Complaint is sua sponte DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Plaintiffs and to mark this case

closed.

                                        SO ORDERED.

                                        /s/ JOANNA SEYBERT
                                        Joanna Seybert, U.S.D.J.

Dated:   July   28  , 2014
         Central Islip, New York